# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CLARENCE OLIN MARLER and GREG )
MARLER CHARTER BOATS, INC., )
                                       )
        Plaintiffs, )
                                         )
v.                                        )        Civil Action No. 13-00423-CG-N
                                         )
TINA PLATTSMIER COOK, JOEL C. )
COOK, and NAUTICAL EXCURSIONS, )
LLC,                                   )
                                         )
        Defendants. )

## REPORT AND RECOMMENDATION

On October 14, 2013, the defendants, pursuant to Rules 12(b)(7) and 19, filed a motion to dismiss (Doc. 28) the plaintiffs' amended complaint (Doc. 22), filed September 19, 2013, after the defendants moved to dismiss (*see* Doc. 7) the original complaint (Doc. 1) for substantially similar reasons. The plaintiffs have filed a response in opposition to the motion (Doc. 34). And the defendants have replied (Doc. 35). The motion is now before the undersigned United States Magistrate Judge for entry of report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2. And, for the reasons explained below, it is **RECOMMENDED** that the motion to dismiss be **DENIED**.

## I.      Applicable Background

The sole issue before the Court is whether the presence of Plaintiff Clarence Olin Marler's wife, Donna Marler, as a party to this litigation is necessary or required. Because this case is proceeding pursuant to the Court's diversity

jurisdiction, *see* 28 U.S.C. § 1332, any required joinder of Mrs. Marler, a Florida citizen, as a defendant, opposite two Florida plaintiffs, would destroy complete diversity and, accordingly, the Court's subject matter jurisdiction, and necessitate dismissal pursuant to Rule 12(b)(7).

The facts underlying this matter, gleaned from the amended complaint (*see* Doc. 22 ¶¶ 12-24), are that, in 2012, Mr. Marler, the longtime owner of a successful fishing business in Destin, Florida, Greg Marler Charter Boats, Inc. ("GMCB"), the other plaintiff—which, together with Mr. Marler, does business as "Olin Marler's Charters ("OMC")—expanded OMC's operation to Orange Beach, Alabama. Mr. Marler hired Defendant Tina Cook, to manage OMC's Orange Beach operations, and Defendant Chris Cook, to captain any boats OMC operated out of Orange Beach. OMC then relocated two boats, the "Miss Florida"—then titled in Mr. Marler's name individually—and the "Tropical Winds"—then titled in the name of GMCB—to Orange Beach.

According to the plaintiffs, Tina Cook, without authorization, transferred more than $293,000 from an account owned by GMCB to either her personal account or accounts owned by Chris Cook or Defendant Nautical Excursions, LLC, an Alabama limited liability company formed by the Cooks. The plaintiffs further allege that the titles of the two vessels OMC relocated to Orange Beach were transferred to Nautical Excursions without bargained-for consideration and without their knowledge. (*See id.*, ¶¶ 25-29.)

The role of Mrs. Marler in the abovementioned transactions varies

significantly from the original complaint to the amended complaint. Originally, Mrs. Marler was cast as the Cooks' coconspirator (if not the ringleader). The amended complaint, however, confines her role to that of their victim. For example, in the operative, amended, complaint, it is alleged that, on April 19, 2013, the vessels were transferred "at the Defendants' urging, and with the direction and other improper and illegal means, and/or coercion or fraud (that Donna Marler or Olin Marler[, as to the Miss Florida, and GMCB, as to the Tropical Winds,] would always own or control the [respective] vessel) practiced by the Defendants upon her, Donna Marler executed a Bill of Sale transferring the [vessels] to Nautical Excursions, LLC, for only 'one dollar [each].'" (*Id.*, ¶¶ 31-33; *see also id.*, ¶ 39 ("Tina Cook regularly met with Donna Marler in 2012 and 2013, and was fully aware that Donna Marler did not have Mr. Marler's authorization to transfer the title [to the two vessels to the Cook's LLC], but nevertheless prevailed upon Donna Marler to transfer the vessels to [the] LLC."); *compare id.*, *with* Doc. 1, original complaint, ¶¶ 26-31.[1]) While neither complaint named Mrs. Marler as a party, the amended complaint dropped two counts in the original, which appeared to implicate Mrs. Marler—a count for civil conspiracy (*see, e.g.*, Doc. 1, ¶ 48 ("All of the Defendants engaged in an unlawful conspiracy to steal [the vessels] from the Plaintiffs . . .'"))

---

[1]     It was alleged originally that Mrs. Marler "conspired" with the Cooks "to transfer the titles to [the two vessels] to Nautical Excursions, LLC without providing any bargained for consideration, and without any knowledge of the Plaintiffs. Indeed, [it was also originally alleged,] Donna Marler, at or about the same time Nautical Excursions, LLC was formed, began a ***widespread pattern of fraudulent conduct*** in which she began fraudulently converting and transferring Mr. Marler's and GMCB's asserts without any knowledge on [their] behalf." Further, the Cooks "***participated in Donna Marler's fraudulent scheme*** to steal [the plaintiffs'] property . . . ." (*Id.* (emphasis added).)

and one for aiding and abetting fraud (*see, e.g., id.*, ¶¶ 55-59 (Mrs. Marler "perpetuated a scheme to fraudulently dissipate the Plaintiffs' assets for her own personal gain" with the defendants' knowledge, and the defendants "knowingly and substantially aided and abetted [that] fraudulent scheme . . .")).

## II. <u>Analysis</u>

### A. Standard for "Necessary" or "Required" Party under Rule 19(a)

Dismissal of an action pursuant to Rule 12(b)(7), for failure to join a party under Rule 19, is "a two-step inquiry":

> First, [a court must] decide whether an absent party is required in the case under Rule 19(a). *See Molinos Valle del Cibao v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011). If the party is a required party, "the court must order that the person be made a party." FED. R. CIV. P. 19(a)(2). Second, if the parties cannot join the new party, the court must consider if, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b).

*International Importers, Inc. v. International Spirits & Wines, LLC*, No. 10–61856–CIV, 2011 WL 7807548, at *8 (S.D. Fla. July 26, 2011); *see also Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982) ("[T]he court must [first] ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue."); *accord Focus on the Family v. Pinellas Suncoat Transit Auth.*, 344 F.3d 1263, 1279-80 (11th Cir. 2003).[2]

---

[2]     *See also Mid-Continent Cas. Co v. Basdeo*, No. 08–61473, 2009 WL 2450386,

Rule 19 provides for joinder of an indispensable party where there is substantial risk of the defendant being subjected to a multiplicity of suits. It is well established under Rule 19 that all claimants to a fund must be joined to determine the disposition of that fund.[3] However, findings of indispensability must be based on stated pragmatic considerations, especially the effect on parties and on litigation. [Therefore,] Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. [That is, t]o say a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: *a court does not know whether a particular person is "indispensable" until it has examined the situation to determine whether it can proceed without him*.

*In re Torcise*, 116 F.3d 860, 865-66 (11th Cir. 1997) (internal citations omitted and footnote and emphasis added); *see also Bates v. Laminack*, 938 F. Supp. 2d 649, 661 (S.D. Tex. 2013) ("To be a necessary and indispensable party, that party must have interests that they are *unable* to protect if the case goes forward without them. [However, *s]ome* interest and *some* adverse effect is insufficient." (citing *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 387 (2d Cir.2006)) (emphasis added)).

---

at *7-8 (S.D. Fla. Aug. 7, 2009) ("The first part of the test might be more clearly understood as involving two questions: whether the non-party should be joined and whether joinder is feasible. Where both a nonparty should be joined and joinder is feasible, the nonparty is 'required' or 'necessary' but not necessarily 'indispensable.' If so, then pursuant to Rule 19(a)(2), the Court must order that the person be made a party, rather than dismiss. Thus, *dismissal* for failure to join an indispensable party is *only appropriate where the nonparty cannot be made a party*." (internal citation omitted and emphasis added)).

[3]    Of course, "[m]erely being a joint tortfeasor is not enough to make a party indispensable." *Bates v. Laminack*, 938 F. Supp. 2d 649, 660 (S.D. Tex. 2013) (citing *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.")). Neither does "[t]he fact that the existing Defendants may have some right of reimbursement, contribution, or indemnity against a non-party . . . make the non-party indispensable." *Id.* (citations omitted).

As *In re Torcise* implies, a party that "is not [ ] necessary [ ] within the meaning of Rule 19(a), by definition [ ] cannot be [ ] indispensable [ ] within the meaning of Rule 19(b)." *Scottsdale Ins. Co. v. Subscriptions Plus, Inc.*, 195 F.R.D. 640, 646 (W.D. Wis. 2000); *see also Challenge Homes*, 669 F.2d at 669 ("As many courts and commentators have noted, the term 'indispensable party' is merely a conclusion arrived at after completing the analysis in Rule 19." (citations omitted)). And in making this initial—"necessary"—determination, "'pragmatic concerns, especially the effect on the parties and the litigation,' control." *Focus on the Family*, 344 F.3d at 1280 (quoting *Challenge Homes*, 669 F.2d at 669 (in turn quoting *Smith v. State Farm Fire & Cas. Co.*, 633 F.2d 401, 405 (5th Cir. 1980))); *accord In re Torcise*, 116 F.3d at 865.

### B.     Mrs. Marler is Neither a "Necessary" Nor "Required" *Party*

The undersigned first notes that the defendants contest the plaintiffs' shifting stance toward Mrs. Marler, pointing out that, shortly after the filing of the amended complaint, Mrs. Marler swore out an affidavit to clarify "that she did not make the[] new allegations or contribute to plaintiffs' counsel's fabrication of them. To the contrary, [she] sw[ore] the opposite is true, to wit:

> I have not authorized attorney Peterman to make any claims or assertions on my behalf.  Specifically, I have learned that the Amended Complaint alleged that Tina and Chris Cook urged, directed, coerced, defrauded and/or used other improper or illegal means to influence my decision to transfer the bills of sale for the vessels Miss Florida and Tropical Winds to Nautical Excursions, LLC.  Neither Tina nor Chris Cook made misrepresentations to me regarding the transfer of ownership involving Nautical Excursions or Greg Marler Charter Boats, Inc.  These allegations are specious, untrue, and without any basis in fact.

(Doc. 29 at 3 (quoting Doc. 29, Ex. C, D. Marler Oct. 14, 2013 Aff. [Doc. 29-2 at 41] (footnote omitted)).) Mrs. Marler has also sworn an affidavit stating, moreover, that the transactions initiated by Tina Cook, the subject of the complaint, "were made with [Mrs. Marler's] express instruction, information and knowledge . . . ." (*Id.* at 4 (quoting *id.*, Ex. F, D. Marler Aug. 19, 2013 Aff. [Doc. 29-2 at 44]).)

Accordingly, the defendants' theory why Mrs. Marler is a necessary party to this case is, quite understandably, that "all of the material facts relate back to or are Donna Marler's conduct." (Doc. 29 at 6.) Stated differently, ***regardless of which role Mrs. Marler played as to the facts underlying this lawsuit***, "[w]ithout [her], none of the [banking] transactions . . . giving rise to the plaintiffs' claims could and would ever have occurred. Similarly, without [her] conduct pursuant to her Power of Attorney [for Mr. Marler], the boat titles could and would never have been transferred to Nautical Excursions, LLC." (*Id.*) It is also apparent, moreover, that prior to amendment of the complaint, although she was not named a party herself, Mrs. Marler was, for all intents and purposes, the defendants' alleged joint tortfeasor. (*See, e.g.,* Doc. 1, ¶¶ 26-31, 55-59.) However, regardless of Mrs. Marler's role—alleged joint tortfeasor; unwitting victim; or, undoubtedly, key witness—it has not been shown that she is a necessary ***party*** pursuant to Rule 19(a).[4]

---

[4] The elimination of the conspiracy claim sharpens the parties' dispute to which side has rightful ownership of the transferred funds and the vessels. While the recharacterization of Mrs. Marler's role in the amended complaint is more than cosmetic, as will be explained below, the gravamen of her role—that of someone with no ownership interest in the subject matter of this lawsuit—does not change from the original to the amended complaint. *Cf. In re Apple iPhone 3G Prods. Liab. Litig.*, MDL No. C 09–02045

First, it has not been established that Mrs. Marler has any ownership interests in the money transferred to the defendants or the two vessels. For example, the applicable durable power of attorney for finance (*see, e.g.,* Doc. 29-2 at 5-20), executed by Mr. Marler in November 2012 and designating Mrs. Marler as his agent or attorney-in-fact, gives Mrs. Marler, in that role, "all powers of an absolute owner over [Mr. Marler's] assets and liabilities" (*id.* at 5), but it clearly does not give her an ownership interest in Mr. Marler's assets (*cf. id.* at 17 ("My Agent shall not exercise any of the powers for my Agent's own benefit or in satisfaction of a legal obligation of my Agent except and unless specifically provided for above.")). (*See also* Doc. 35 at 3-4, 8-9 (in which the plaintiffs make this argument, which has not been refuted by the defendants (*see* Doc. 36 at 3)).)

Thus, Mrs. Marler's absence does not mean "complete relief cannot be accorded among those already parties." FED. R. CIV. P. 19(a)(1); *compare Challenge Homes*, 669 F.2d at 670 ("As to the first factor, the only persons with any interest in the lease at issue are . . . both [already] before the court") *and McNeely v. Berk*, No. 5:10–cv–682–Oc–37TBS, 2011 WL 5358057, at *5 (M.D. Fla. Oct. 31, 2011) ("By virtue of the assignment Walters no longer has an interest in the subject of this action as required by Rule 19(a)(1) for the Court to [ultimately] find him to be indispensable."), *with Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885

---

JW, 2011 WL 6019217, at *3 (N.D. Cal. Dec. 1, 2011) ("It is true that [this version] differs from earlier versions of the Complaint, insofar as it omits all references to ATTM. However, Plaintiffs have simply deleted references to ATTM that appeared in their previous Complaint without altering the gravamen of their allegations. These cosmetic modifications to the Complaint are unavailing, however, as the Court has already held that ATTM is an 'indispensable party[.]'" (footnote omitted)).

(5th Cir. 1968) (affirming ruling "that an owner of an undivided onesixth interest in realty is an indispensable party for the adjudication of an action to invalidate an easement across jointly-owned property") *and In re Torcise*, 116 F.3d at 865 ("It is well established under Rule 19 that all claimants to a fund must be joined to determine the disposition of that fund." (citing *Johnson v. Middleton*, 175 F.2d 535, 537 (7th Cir. 1949)); *cf. United States v. Townhomes of Kings Lake HOA, Inc.*, No. 8:12–cv–2298–T–33TGW, 2013 WL 807152, at *4 (M.D. Fla. Mar. 5, 2013) ("The fact that Mr. Pilka acted as Defendants' 'agent' does not make him a required party.").

Next, from complete relief, the focus of Rule 19(a) shifts to "possible prejudice either to the absent party, Rule 19(a)(2)(i), or the present litigants, Rule 19(a)(2)(ii)." *Challenge Homes*, 669 F.2d at 670. Like Lowell Kramer, the absent party in *Challenge Homes*, Mrs. Marler "unquestionably has an interest in this litigation inasmuch as any recovery by [the plaintiffs] against [the defendants likely] would be based on a finding that [Mrs. Marler] breached [her] **fiduciary** duty to [Mr. Marler]" pursuant to the applicable power of attorney. *Id.* (emphasis added). Thus, the inquiry is "whether the absence of [Mrs. Marler] in any way jeopardizes [her] interests or subjects any party to multiple or inconsistent obligations." *Id.* Again, like Kramer, because Mrs. Marler "is not a party to this suit and will not have an opportunity to litigate [her] involvement in the questioned transaction[s, she] will not be legally bound by the judgment under principles of *res judicata* or collateral estoppel[,]" *id.* (citing *Stovall v. Price Waterhouse Co.*, 652 F.2d 537, 540 (5th Cir. 1981)), which means Mrs. Marler "will have a full

opportunity to litigate [her] participation [in the transactions underlying this lawsuit] should [the plaintiffs] sue [her] at some future time[,]" *id.*

That said, the analysis nevertheless continues: "A court may not

proceed without considering the potential effect on nonparties simply because they are not "bound" in the technical sense. Instead as Rule 19(a) expresses it, the court must consider the extent to which the judgment may "as a practical matter impair or impede his ability to protect" his interest in the subject matter.

*Id.* (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968)).

In *Challenge Homes*, in determining whether Kramer's absence had a "practical" effect, the Eleventh Circuit distinguished two former Fifth Circuit decisions: *Schutten v. Shell Oil Co.*, 421 F.2d 869 (5th Cir. 1970) and, most pertinently to this dispute, *Haas v. Jefferson National Bank*, 442 F.2d 397 (5th Cir. 1971).[5] In *Haas*, as characterized by the court in *Challenge Homes*,

---

[5]     It should be noted that the defendants rely extensively on *Haas* to show why Mrs. Marler is a necessary party:

In *Haas*, the former Fifth Circuit found Charles H. Glueck, the nonparty whose joinder formed the basis of the Rule 12(b)(7) motion, "should be joined if feasible" under 19(a) because

his presence is critical to the disposition of the important issues in the litigation. His evidence will either support the complaint or bolster the defense: it will affirm or refute Haas' claim to half ownership of the stock; it will substantiate or undercut Haas' contention that the Bank had knowledge of his alleged ownership interest; it will corroborate or compromise the Bank's contention that Glueck rescinded the transfer order; and it will be crucial to the determination of Glueck's obligation to the Bank under the promissory note. The essence of Haas' action against the Bank is that it 'unlawfully and recklessly seized, detained, (and) exercised improper dominion' over his shares in transferring and delivering them to the second bank as collateral for Glueck's loan. Thus, Glueck becomes more than a key witness whose testimony would be

[P]laintiff Haas sought an injunction against the bank to issue 169½ shares of its stock to him. Haas asserted that he and Charles Glueck had purchased shares in the bank jointly, and that the bank knew of his interest but nevertheless, at Glueck's request, transferred the shares to a second bank as collateral for a loan. The court held that Glueck was a party to be joined if feasible [ ] because [1] transfer of the stock to Haas would prejudice Glueck's ownership and control of all the shares [and 2] a judgment in favor of Haas could leave the bank open to double liability, because Glueck, who would not be bound by the judgment, could later sue the bank in a separate action and win.

669 F.2d at 670 & n.4 (noting that under the later, "Glueck also met the test of Rule 19(a)(2)(ii)"). However, unlike Glueck in *Hass*, **but** like Kramer in *Challenge Homes*, Mrs. Marler "has **absolutely no interest in the subject matter of the suit**," such that any ultimate judgment in this suit "would have **no effect, practical or otherwise,** on [her]. As a result, . . . [her] interests in this suit would not be prejudiced by [her] absence as a party." *Id.* at 670-71 (emphasis added)[6]; *see*

_____

of inestimable value. Instead he emerges as an active participant in the alleged conversion of Haas's stock.

Similarly, the Cooks have presented substantial evidence that each and every transaction giving rise to the Amended Complaint, and the original Complaint, were conducted with the involvement, knowledge and approval of Donna Marler. Her presence "is critical to the disposition of the important issues" in this litigation. *Id.* Her knowledge and involvement will be evidence that either supports the complaint or bolster[s] the defense: it will affirm or refute the plaintiffs' claims, of theft, conversion, wantonness, fraud and unjust enrichment. It will corroborate or compromise the plaintiffs' claim[s] . . . . It will be crucial to the determination of both the Cooks' and Donna Marler's **fiduciary** duties and obligations to the plaintiffs, if any. Further, since the facts show the Cooks were more akin to partners, and not employees, of the plaintiffs, heir duties and obligations should be shared with and evaluated in the same manner as Donna Marler's.

(Doc. 36 at 6-7 (quoting *Haas*, 442 F.2d at 398) (emphasis added).)

[6] To the extent the defendants here argue that *Haas* "established an exception to the joint tortfeasor rule for parties who are 'active participants' in the matters at issue[,]" at least one district court in the Fifth Circuit has rejected any assertion that *Haas* creates such an exception, finding, similar to the Eleventh Circuit in *Challenge Homes*, that "the

*also McNeely*, 2011 WL 5358057, at *5 ("In assessing pragmatic concerns in the present case, the Court finds the failure to join Walters in the present lawsuit will not affect the defendants' future liability because Walters assigned any claims he may have against the defendants to the plaintiffs.").

Finally, the undersigned must consider whether, "given [Mrs. Marler's] interest" in this lawsuit, the defendants "might be subject to multiple or inconsistent liability." *Challenge Homes*, 669 F.2d at 671. The defendants do not raise the prospect that they will, or can, seek indemnity from Mrs. Marler, however, "[b]ecause [she] would not be legally bound by a judgment in this case, [the defendants] could theoretically lose a later suit for indemnity against [her]." *Id.* But, as explained in *Challenge Homes*, the defendants "may protect [themselves] against this possibility by impleading [Mrs. Marler] under Rule 14" and, as such, suffer no prejudice by her absence as a party. *Id.* at 671 & n.5 (noting that joinder under Rule 14 "would come under the ancillary jurisdiction of the court, so that the case could go forward despite lack of complete diversity" (citations omitted)); *see also General Elec. Credit Corp. of Tenn. v. First Nat'l Banc, Inc.*, No. CV205-112, 2005 WL 2143971, at *3 (S.D. Ga. Sept. 2, 2005) (raising prospect of impleading an absent party, Shafer, under Rule 14 after noting, "Although resolution of this matter may result in subsequent litigation, that possibility, without the additional

---

*Haas* opinion turns on the 'adjudication of rights to a *res*' concept rather than creating an exception to the joint tortfeasor rule of dispensability." *Bates*, 938 F. Supp. 2d at 660; *see also id.* at 660-61 (noting that a claim for civil conspiracy implicating an absent and claimed-to-be necessary party that is apparently abandoned—or, as to Mrs. Marler, actually dropped—militates in favor of finding the absent party to be not necessary to the lawsuit).

threat of inconsistent obligations, does not make Shafer a necessary party." (citing *Challenge Homes*, 669 F.2d at 671; other citations omitted)); *Park v. Didden*, 695 F.2d 626, 632 (D.C. Cir. 1982) (R. Ginsburg, J.) ("Didden suggests that proceeding without his co-lessors may undermine his right to contribution from them. These protests lose all force in light of the protection Rule 14 places within his grasp." (citing *Challenge Homes*, 669 F.2d at 671)).[7]

Thus, because the absent Mrs. Marler is not a necessary (or required) party pursuant to Rule 19(a), the Court need not order that she be joined or consider whether this action should proceed in her absence, under Rule 19(b), or be dismissed, pursuant to Rule 12(b)(7). *E.g., International Importers*, 2011 WL 7807548, at *8; *see also Jet Pay, LLC v. RJD Stores, LLC*, No. 11–60722–CIV, 2011 WL 2708650, at *9 (S.D. Fla. July 12, 2011) ("RJD, Inc., has not claimed an interest relating to the subject of this action. Moreover, as the action is currently pled, it does not, on its face, involve an interest of RJD, Inc., because the Amended

---

[7]     The plaintiffs discuss joinder of Mrs. Marler as an involuntary plaintiff (*see* Doc. 35 at 9-10)—the defendants insist that their motion is not directed at any such joinder (*see* Doc. 36 at 9-10)—but, as this Court has pointed out previously, Rule 19(a) places limits on the naming of involuntary plaintiffs. Because the parties have failed to address whether this is a "proper case" for joining Mrs. Marler as a plaintiff involuntarily, the Court should not entertain this notion. *See Chiropartners, Inc. v. Gravely*, No. CA 1:12–00223–CG–C, 2012 WL 4050840, at *3-4 & n.9 (S.D. Ala. Aug. 24, 2012) ("According to Federal Rule of Civil Procedure 19(a), when an indispensable party refuses to join as plaintiff in a suit, a party may 'be made a defendant, or, in a proper case, an involuntary plaintiff.' Although no limitations are placed on the ability to add an indispensable party as a defendant, Rule 19(a) limits the naming of involuntary plaintiffs to 'proper case[s]' only. Traditionally, a 'proper case' is one in which the involuntary plaintiff is outside the court's jurisdiction and is under some obligation to join the plaintiff's lawsuit but has refused to do so." (quoting *Murray v. Mississippi Farm Bureau Cas. Ins. Co.*, 251 F.R.D. 361, 364 (W.D. Wis. 2008) (citations omitted))), *report and recommendation adopted*, 2012 WL 4050188 (S.D. Ala. Sept. 13, 2012).

Complaint alleges that RJD, LLC—not RJD, Inc.—is bound by the Agreement with Jet Pay, and that theory appears to present one viable construction of the Agreement . . . . Furthermore, even if RJD, Inc., had an interest in the Guaranty or Agreement, without being a party to this litigation, RJD, Inc., would not be legally bound by a judgment in this case under principles of res judicata or collateral estoppel. Rather, RJD, Inc., would have a full opportunity to litigate its participation in the Agreement should either Jet Pay or Fingerer sue it. With respect to potential prejudice to Fingerer, to the extent that Fingerer wishes to argue in defending herself that the Agreement binds RJD, Inc., not RJD, LLC, she may do so and she or Jet Pay may or may not then choose to seek to implead RJD, Inc., under Rule 14, at that time. Because nothing renders RJD, Inc., a necessary party at this time, however, Fingerer's Motion to Dismiss under Rule 12(b) (7) must be denied." (citations omitted or modified)).

## III.   Conclusion

Therefore, it is **RECOMMENDED** that the defendants' motion to dismiss (Doc. 28) the amended complaint (Doc. 22) be **DENIED**.

To the extent Judge Granade agrees with the undersigned and finds that this case may proceed as currently pled, the parties are **reminded** that they must meet and confer and file their planning report pursuant to Rule 26(f)[8] no later than

---

[8]   As discussed herein, while Mrs. Marler is not a necessary party within the confines of Rule 19(a), she is clearly an interested one. Given this and the nature of the allegations underlying this lawsuit, it is the undersigned's recommendation that the parties consider early case evaluation, such as mediation with a qualified neutral experienced in similar disputes. The undersigned could certainly craft the scheduling order in this matter to facilitate this end, including, for example, providing limited, tailored discovery to set the

**fourteen days** after Judge Granade's final order on the motion to dismiss the amended complaint. (*See generally* Doc. 33.)

### IV.   Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 18th day of November, 2013.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

dispute up for successful mediation. *See, e.g.,* FED R. CIV. P. 16(a)(1), (3) (which encourages courts to utilize pretrial procedures to "expedit[e] disposition of [an] action and "discourag[e] wasteful pretrial activities"); FED. R. CIV. P. 26(b)(2)(C)(iii) (all discovery in an action should be proportional to, among other things, "the needs of the case"). Accordingly, the parties are **DIRECTED** to address early cause evaluation, limited discovery, and expedited mediation in the Rule 26(f) submission.